UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11657-RGS

LUISA HAYWARD HOLDEN

V.

CLIVE CARDOZO, ET AL

RESPONSE TO MEMORANDUM AND ORDER TO SHOW CAUSE,
SUMMARY COMPLAINT AND MOTION

Luisa H. Holden, filing *pro se* with leave of the court. On August 25, 2004, Honorable Judge R.G. Stearns issued an Order to Show Cause as to why the complaint, Holden v. Cardozo should not be dismissed in its entirety. Judge Stearns cited the Rooker- Feldman doctrine as reason for dismissal. Under Rooker-Feldman, Judge Stearns stated that "he could not invalidate the judgment of a state court." I am not asking the Court to invalidate a state court ruling. I am asking the Court to look at the conduct of the defendants surrounding the state court ruling and the question of federal kidnapping and abduction in your jurisdiction that Massachusetts and New York State Courts do not have an adequate legal remedy.

There are several reasons why the Rooker-Feldman doctrine does not apply in this case:

1) In order to apply the Rooker-Feldman doctrine, a judgment must be final and from the state's highest court. [27 A FPD 4th -55] There are several issues regarding this case in front of Honorable Judge William J. Kent in the New York Supreme Court and Honorable Judge Gregory J. Blass in the Riverhead Family Court, Suffolk County, New York that have yet to be decided. Also in the New York Appellate Court, the appeals were not properly placed in front of the Court by Attorney Lana Cantrell to render an

appropriate decision based on the full evidence. This evidence has been placed in front of Judge Kent and Judge Blass for this decision. There are several unanswered motions in the Riverhead Family Court since March 17, 2003. Since this is an ongoing case, Rooker-Feldman does not apply. [Gordon v. Koppel 203 F. 3d 610]

In an ongoing case, the Younger abstention doctrine would apply. The Younger doctrine states that federal courts must abstain with ongoing state court proceedings, "absent extraordinary circumstances that present immediate, irreparable injury to the federal plaintiff." I feel that <u>forcibly taking a child away from his mother on public school property</u> and the sustaining of this action is causing the type of trauma and immediate, irreparable injury to me and my son that would argue against the Younger abstention and allow the federal court to grant my motion in this case. [Baby Neal v. Casey 821 F. Supp. 320.]

2) Furthermore, the conduct of the municipal officials of the Town of Weston, MA and Clive Cardozo and his accomplices on June 6, 2003 showed deliberate indifference and reckless disregard to me and my son Quinn. The Younger doctrine does not apply because none of the replies received by me have refuted the claims made: the federal kidnapping charge [18 U.S.C.A 1201 (a)(1)] or the violation of substantive due process right [U.S.C.A. Const. Amend. 14; 42 U.S.C.A. 1983] to companionship with my child Quinn and infringement on my liberty, encroachment of my privacy which was caused by deliberate indifference and or reckless disregard. [Smoot v. The City of Placentia 950 F. Supp. 282 (C.D. Cal. 1997)]. Even though excessive force and gross negligence were part

of the conduct of Clive Cardozo and officials of the Town of Weston, MA, the minimum standard has been met by deliberate indifference and reckless disregard. In summary of point 2, "Having been provided no evidence by the defendants in this case to cast doubt as to the legitimacy of this claim, the Court can not find that it is required to abstain under Younger", similar to Manos v. Caira, [162 F. Supp. 2d 979 (N.D. Ill. 2001)]

3) Rooker-Feldman and Younger abstention do not fit because this is a diversity jurisdiction case. The Massachusetts Courts and the New York Courts are limited in their scope to deal with this case and the entire interstate issue. The New York Court abstained over what happened in Massachusetts on June 6, 2003 because they had no jurisdiction in Massachusetts. Since Quinn is now in New York, The Massachusetts Courts wouldn't deal with the procedurally and substantive issues of the kidnapping of Quinn because they have no jurisdiction in New York. The diversity of jurisdictions has kept the full scope of this case and these issues from being addressed. As in Rhodeman v. Robertson and Penn Inc., D. Kan. 1992, 807 F. Supp. 103., "District Court had subject matter jurisdiction based on diversity of citizenship and federal question, where discharged employee pleaded that he was resident of Kansas and that employer was Missouri corporation, and employee alleged conduct actionable under various civil rights statutes."

4) Another aspect in the diversity issue of this case is the diversity in state laws addressing out of state custody orders and their implementation and enforcement. I allege reckless misconduct, gross negligence and bad faith by Clive Cardozo and his accomplices and the Town of Weston in the manner in which this matter was handled. The conduct of the defendants shows that they have dealt in bad faith. The Weston Town officials were

acting on everyone else's word and a faxed, uncertified paper on a law firm letterhead instead of a certified Court order with an official state stamp, court clerk's signature verifying it is a certified document of the court and filed appropriately in the Massachusetts Courts for verification and enforcement. There was never a hearing or any papers filed or verified to allow Quinn to leave Massachusetts. As in Mandel v. Town of Orleans, 326 F. 3d 267 (1st Cir. 2003), " Like other states, Massachusetts has a scheme- virtually mandated by federal law, see 28 U.S.C. sec. 1738 A (a)(2000)- for implementing custody orders issued by other states. Mass. Gen. Laws ch. 209 B, sec. 2(e) (2000). Perhaps in Massachusetts an enforcement order can initially be secured ex parte where it merely implements a full-scale custody decree obtained in another state; the order in this case scheduled a hearing for the next day." Substative due process rests on idea that governments conduct, regardless of procedural swaddling was in itself impermissible as being arbitrary and capricious, counter to the concept of ordered liberty or "shocking or volative of universal standards of decency." As in Mandel v. Town of Orleans, 326 F. 3d 267 (1st Cir. 2003), this Federal District Court gave standing to hear the case regarding an out of state custody order, therefore, precedent has been set as the kidnapping of Quinn took place in this territorial jurisdiction.

5) If the purpose of a federal action is separable from and collateral to a state court judgment, then the claim is not inextricably intertwined merely because the action necessitates some consideration of the merits of the state court judgment. "Fathers sec. 1983 action against the state and two state court judges alleging that his equal protection rights were violated during the course of his child custody case in state court, was not barred by the Rooker-Feldman doctrine; Father did not ask federal court to determine that

state court case was unconstitutional or otherwise invalid, but challenged alleged misconduct in the case. [U.S.C.A. Const. Amend. 14; 42 U.S.C.A. sec. 1983-id.] Rooker-Feldman doctrine, precluding lower federal court interference with state court decisions, did not preclude consideration of sec. 1983 claim by mother that county welfare agency violated First Amendment and Due Process rights in handling of her children and claim of conspiracy to violate civil rights, despite state court dismissal of complaint alleging negligence causing undue estrangement and decomposition of family unit; as issues were different federal court would not be disturbing state courts' ruling. [42 U.S.C. A. sec. 1983, 1985. Behm v. Luzerne County Children & Youth Policy Makers, 172 F. Supp. 2d 575]

NATURE OF ACTION: AMENDING COMPLAINT

1) This action under 42 U.S.C., Sec. 1983 seeks to redress a violation of rights protected by the Constitution of the United States and the Commonwealth of Massachusetts. Defendant unconstitutionally infringed on plaintiffs' rights of substantive and procedural due process under the Fifth and Fourteenth Amendment of the United States Constitution. "The interest of parents in the care, custody and control of their children is a fundamental right protected by substantive due process." [U.S.C.A. Const. Amend. 14, Suboh v. City of Revere, MA, 141 F. Supp. 2d 124]

State intervention that results in the termination of a close parent-child relationship must adhere strictly to requirements of procedural due process. [U.S.C.A. Const. Amend. 5, 14. Polovchak v. Meese 774 F. 2d 731]

At a minimum, due process requires timely notice of a hearing at which parents' right to custody are at stake. [U.S.C.A. Const. Amend. 14, Dykes v. Hosemann, 743 F. 2d 1488]

Even if an emergency situation justifies taking custody of a child from a parent without prior notice and hearing; due process requires that an adequate post-depravation hearing must occur in a reasonable time. U.S.C.A. Const. 14 Id., Vinson v. Campbell County Fiscal Court, 820 F. 2d 194 [see10, 201]

Federal procedural due process guarantees prompt post-depravation judicial review in child custody cases. U.S.C.A Const. Amend. 14, Campbell v, Burt, 141 F. 3d 927

See also, Woodrum v. Woodword County, Okl., 866 F, 2d 1121, Craft v. Westmoreland County Children and Youth Services 703 F. 3d 1123

2) This action under 18 USC Sec. 1201 or Mass. Gen. Law Ch. 265 Sec. 26A seeks a kidnapping charge against Clive Cardozo and accomplices aided and abetted by the Town of Weston, MA. Kidnapping is taking by force or fraud, enticing away or detaining another person, more particularly a child, for the purpose of secretly confining or concealing such person or removing him to another state or country. [18 USC Sec. 1201]. To obtain conviction for kidnapping under 18 U.S.C. sec. 1201, the government must prove that: 1) the victim was unlawfully seized...abducted or carried away 2) the victim was held 3) the victim was transported in interstate commerce. "The term "otherwise" as used in statute under which a defendant who holds a victim "otherwise" than for ransom or reward is guilty of kidnapping, includes any objective of a kidnapping which the defendant may find of sufficient

benefit to induce him to commit the kidnapping; defendant need only hold the victim for some purpose of his own." [18 U.S.C. sec. 1201 (a)(1), U.S. v. Sensmeier 2 Fed Appx. 473 (6th Cir. 2001)]

The police report from the Town of Weston showed evidence of the kidnapping when it stated that Quinn had to be forced into a vehicle by the Weston Police Department and Clive Cardozo. "Evidence that sustained finding in support of a federal kidnapping conviction that victim was seized and held against his will …. Permitting jury to conclude that seizure had occurred when victim first entered vehicle….. Because there was evidence that he did so against his will." [U.S. v. Sellers 62 Fed. Appx. 499, (4th Cir. 2003)]

This was an arbitrary act with total disregard that used excessive force and was egregious. This action seeks pain and suffering for the trauma imposed by this egregious act, embarrassed, denigrated and stigmatized me and Quinn in the community and suffered a substantive due process loss of companionship of my only son, Quinn. This was brought about by the deliberate indifference and reckless disregard on the part of Clive Cardozo, The Weston Schools and the Weston Police. The force used on Quinn was unwarranted. This alleged injury "distinct and palpable", "egregious" and willfully unnecessary to be handled in this manner. The result was an encroachment of our privacy and the use of excessive force which traumatized my son, me and the children in the Field School who witnessed this incident. I contend that the defendants conduct resulted in a lack of substantive and procedural due process. The results of these actions deprived me of "fundamental rights"- my liberty interests have been denied and penumbral right of privacy also

merits protection. The egregious act on June 6, 2003 in the continued sustaining or condoning of this kidnapping is a violation of substantive due process, right to companionship and happiness of my child.

3) Due to the negligent actions of the attorneys involved, the plaintiff seeks attorney fees to be reimbursed pursuant to 42 U.S.C. Sec. 1983.

4) The New York court system has acted in "Bad Faith" in handling this case. They have not answered a Motion to Dismiss for 18 months in the Riverhead Family Court. Other motions are also waiting to be answered. The New York Supreme Court heard an action by Cardozo that was abandoned for over 2 years without being properly served.

## JURISDICTION AND VENUE

The Federal Court has jurisdiction established by:

a) A Diversity of Jurisdiction as the State of New York and the Commonwealth of Massachusetts has different laws regarding child custody. I have attempted in good faith to resolve this issue in both states to no avail. There is a lack of legal remedies on the state level that encompass the full scope of this matter. The diversity issue requires that this court take jurisdiction of this case.

b) There is an issue regarding the forced kidnapping of Quinn Holden.

c) The matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs in pain and suffering and legal bills.

d) A Diversity of Citizenship as Cardozo is a resident alien, residing in the State of New York and Luisa H. Holden is a United States Citizen residing in the Commonwealth of Massachusetts.

e) Federal Law questions are involved:

1) Lack of substantive and procedural due process, Fourteenth Amendment of the United States Constitution, USCA Const. Art. 4 Sec. 1; Amend. 14; 42 U.S.C. Sec. 1983

2) Interstate seizure/kidnapping, [18 U.S.C. Sec. 1201 (a)(1)]

3) Federal Rule 12

PRESENT SITUATION

1) There has been no relief to my request to rectify this wrong forceful abduction/kidnapping. There is a clear showing of abuse of power and force to Quinn that no one has rectified, substantiated by psychologist's affidavits and letters and witnesses affidavits to this horrific, egregious incident on June 6 2003. This forceful abduction/kidnapping on June 6, 2003 endangered the mental and physical well being of my child and myself. I have been unable to contact him by telephone or see him. The forceful taking of Quinn from the classroom and shoving him in the car caused immediate emotional and psychological injuries to me and Quinn. Quinn also received physical injuries.

2) On August 11, 2004, at 4:15 PM, in a telephone call to the Riverhead Family Court, I was informed that the court is just piling all letters, motions and faxes in the file without

action until September 8, 2004. Judge Gregory Blass of the Riverhead Family Court, Suffolk County, New York has been presented with several motions and has not acted upon them including a March 17, 2003 Motion to Dismiss and a June 25, 2004 motion pursuant to Rule 5015 and other New York civil rules and practices. Evidence has been given him that requires him to unconditionally vacate and he has failed to act upon these and other motions. September 8, 2004 has passed and the New York courts have not ruled. I have exhausted my abilities for a court to be able to legally rectify the wrong that has been done to my son in a timely manner. The Massachusetts and New York Courts do not have complete scope or authority as the Federal Court. Clive Cardozo violated the Massachusetts Restraining Order 209 A and abducted / kidnapped Quinn by force or seizure without any identification or verified legal order at the Weston Public School, Weston, MA. The Massachusetts courts failed to hold him in contempt when he failed to appear in Massachusetts' courts to answer to this incident and paternity. The New York courts are not rectifying the administrative mistakes that have plagued this case from the beginning as well have addressed the Default Judgment that was entered without substantive and procedural due process. These factors led up to the uncertified order that Cardozo came with which lacked legal foundation and was procedurally and substantively incorrect to remove Quinn from the Weston Public School classroom on June 6, 2003. The New York courts stated that they can't do anything about what happened in Massachusetts. Since Quinn is in New York, Massachusetts courts state that it is a New York issue. There is inadequacy of remedies at law on the state levels to deal with this interstate jurisdiction issue. Acting pro se, I am not sure what measures that the federal district court could enforce, but I have a made a good faith effort putting the

evidence in front of the courts and whether it is procedural swaddling, bad faith effort to malicious conduct, there has been no relief. (See attached affidavit)

3) The emotional injury to Quinn and I has been immediate, irreparable and sustained since June 6, 2003. These extraordinary circumstances warrant action. It has been 15 months and 6 days.

4) There is a larger issue at stake. There is a legal federal controversy at stake. By protecting children in school, the federal court will allow children to feel safe in a public classroom. They should feel safe and beyond harm in a public classroom. A public school is not an appropriate forum to seize a child with other children watching and force him into a car and fly him with no personal belongings out of the Commonwealth of Massachusetts, across state lines.

FACTS

1) Clive Cardozo is the alleged father of Quinn Holden. This fact has not been established with paternity test yet contradictory evidence, i.e. blood types do not match, shows that Clive Cardozo is not the father of Quinn Holden. Clive Cardozo is A+, Luisa Holden is O+ and Quinn Holden is O-. On August 7, 2003, Clive Cardozo was ordered to appear, served in hand, Commonwealth Of Massachusetts, The Trail Court, Probate and Family Court Department, Docket No. 03W1156-PA Complaint to Establish Paternity to adjudicate the defendant to be the father of the child and answer questions to the taking of Quinn. Clive Cardozo did not comply with this court order. (Enclosure). In 2000, Quinn was diagnosed with a life-threatening emergency and Clive Cardozo refused to give a blood sample.

2) On March 17, 2003, an unsigned, Order to Show Cause for a Contempt Hearing was served on a John Doe. Notice was not served upon Luisa H. Holden, personally in-hand as required, for a Contempt Hearing. Notice was not served upon Luisa H. Holden that her son was being taken from her for Failure to Appear to a Contempt Hearing. In addition, the Order to Show Cause was never signed by the attorney. Substantive and procedural due processes were not followed. (Enclosure)

3) On June 4, 2003, Cardozo emailed Luisa H. Holden requesting to see Quinn for 2 hours at the Weston Public Library on June, 6, 2003. On May 31, 2003, Cardozo had an earlier visit with Quinn Holden at the Weston Public Library. This shows his fraudulent intention. (Enclosure)

4) On June 6, 2003, Clive Cardozo, the defendant and accomplices James Reiher, Lloyd Scott and Martin Mak flew on a Cessna 195, owned by James Reiher from New York to Hanscom Field, Jet Aviation Bedford, Bedford, MA. Frank Diglio, manager of FBO services, Jet Aviation Bedford, stated that Cardozo contacted his location requesting a courtesy vehicle to "snatch" Quinn Holden. Mr. Diglio refused the request and directed Cardozo to Hertz car rental.

5) Quinn Holden and his natural mother, Luisa H. Holden (born and raised in Massachusetts) are residents of Weston, Massachusetts. Ms. Holden moved home legally September 7, 2000 with the custody of Quinn. He was enrolled in the Weston Public Schools for 3rd, 4th and 5th grades. Quinn Holden was living with his mother for his entire natural life. Quinn Holden was enrolled as a fifth grade student at The Field School, Weston, MA when on June 6, 2003, Cardozo came to "snatch" him from Weston, MA, in Middlesex County, USA. Around 2:00 PM, before the end of

the school day, upon Cardozo's instructions, the Weston Police and Detective Walter Nelson ordered Ms. Holden and Officer Keith Kasprzak to get Quinn from the classroom. After Quinn was removed from the classroom under Weston Police instruction, Cardozo seized him by force and fraud and against his will, shoved him into the back seat of a car and flew Quinn across state lines to Malloy Air East, Gabreski Airport, Westhampton Beach, New York.

6) On June 6, 2003, Cardozo came with uncertified, faxed papers from the State of New York, dated May 15, 2003 (Enclosure) on a law firm stationary, under false pretenses, removed Quinn from a public school classroom, physically forced him against his will into a vehicle and flew him across state lines. At Common Law, "kidnapping" means to take and carry a person by force and against his will. ( USC Title 18, Chapter 55, section 1201, US v. Marx, C.A. Okl. 1973 485 F. 2d 1179) (US v. Young, C.A. (Va.) 1975, 512 F. 2d 321) Under Massachusetts G.L. ch. 274, a child can not be removed from school forcibly.

7) Quinn Holden refused to go, stating "You have hit me and done drugs. I am not going, I will kick and scream, you'll have to give me anesthesia." Luisa H. Holden also objected. The Weston, MA Police Incident Report stated that Cardozo physically seized Quinn Holden against his will and forced him in the vehicle. Quinn Holden injured his leg in the incident. On file at the Weston Police Station was a notarized statement dated 4/18/03, by Quinn Holden alerting Weston Police to Cardozo's behavior and his unwillingness to leave Massachusetts. (Enclosures) "Evidence that alleged kidnapper employed force against victim was relevant to allegation that victim was held against his will and thus was admissible to prosecution of defendant

for being accessory after the fact to crime of kidnapping." (MGLA c. 274 Sec. 4 Com. V. Eagan, 259 N.E. 2d. 548 357 Mass. 585) "Within context of crime of kidnapping, concept of "confinement" may be broadly interpreted to mean any restraint of persons movement." (Com. V. Lent., 709 N.E. 2d. 444, 46 Mass. App. Ct. 705)

8) Under Federal Kidnapping statue Title 18 Chapter 55, sec. 1201 (8), the kidnapping took place in this territorial jurisdiction of the United States.

9) Quinn Holden's Civil Rights were physically and civilly violated. There was no need to violate his rights in this manner and his rights as a human being. (Civil Rights Law, Mass. G.L. 12, sec. 11, HI, sec. 93 sec.102)

10) Since the abduction of Quinn Holden from The Field School, many facts have come to light that prove that actions of Cardozo are unwarranted and illegal. The following are the general points that everyone was operating on everyone else's authority and word, however no one confirmed the authenticity of the faxed court order that was fraudulently based on an unlawful foundation of a default judgment without proper service. This was an egregious act with horrific consequences. (See attached letter to Judge Gregory Blass dated July 18, 2004 detailing unlawful foundation of default judgment).

11) The Weston Police never sought the identity of Cardozo or his 3 companions. Not so much as a driver's license or resident alien card (Cardozo's expired on 5/17/03) was requested of the 4 men, yet Weston, MA Police proceeded with the action. The mistaken notion that Cardozo was accompanied by Massachusetts State Police Officers was originated from a telephone call to Weston Police Chief Mayo from

Hanscom Lieutenant Thomas Coffey. Frank Diglio, manager of FBO services, Jet Aviation Bedford notified the Hanscom Police about Cardozo's intentions to "snatch" Quinn Holden. Lt. Coffey directed Cardozo to proceed to the Weston Police station rather than the Weston Public Library where he stated that he was going to take Quinn Holden. Lt. Coffey then contacted the Weston Police and informed them to expect Cardozo. There was no notation in the State Police Log at Hanscom Field of the incident. The Weston Police do not deny that they failed to get any identification but rather dismiss it as an unfortunate oversight. This is gross negligence. (Enclosure)

12) The Massachusetts State Police did not give any authority to take Quinn. They did not want Cardozo to go take Quinn from The Weston Library. The Weston Police report is incorrect as the Massachusetts Police were no present. The conduct of the Weston Police and Cardozo was procedurally and substantively incorrect and should not be condoned.

13) Mary Menino, a witness at the Weston Town Meeting investigating this incident, in an affidavit and in a Letter to the Editor of the Weston Town Crier the Weston Police admitted that they did not check the identification of anyone involved. (Enclosures)

14) The Weston Police never checked the authenticity of the State of New York Custody Order, which Cardozo carried with him on June 6, 2003, before acting on it. Instead of directing Cardozo to take his Custody Order to the Middlesex Probate Court to filed Certified, the Weston Police accepted at face value a faxed copy of the custody order. The Weston Police did not take notice that the order assumed that Luisa H. Holden was in jail. Furthermore, the <u>Weston Police did not note that the custody order did not contain a directive giving Cardozo the right to come to Massachusetts,</u>

to take custody of Quinn Holden and take him to New York. It was substantively and procedurally incorrect on face value. Ms. Holden was present when her son Quinn was seized, was not in jail, and was not shown any order to remove her son. Ms. Holden was released from jail at 9:15 AM on May 15, 2003 which makes the May 15, 2003 order substantively and procedurally defective to remove Quinn Holden. (Enclosure)

15) Clive Cardozo never followed proper procedure to file the May 15, 2003 order at the Middlesex Probate Court for a Massachusetts Enforcement hearing and enforcement order to be issued.

16) Luisa H. Holden was never served a copy of the court order changing custody. Luisa H. Holden knew only that she had received an email from Cardozo asking to meet with Quinn at the Weston Public Library on June 6, 2003 as he had done on one prior occasion, May 31, 2003. Weston Police would not give Ms. Holden a copy of the order changing custody. No proper notice had been given and no post-depravation hearing was scheduled or enacted.

17) The fact that Ms. Holden had not been notified of the order changing custody and the failure of the Weston Police to order Cardozo to take his court order to the Middlesex Probate Court for certification and processing, deprived Luisa and Quinn Holden of their Right to Due Process under Federal and Massachusetts law for a review of the custody and jurisdiction issues involving out-of-state parties. [28 U.S.C. Sec. 1738 (a) 2000], [Section 209B of the General Laws of Massachusetts] (Enclosure with form)

This case justifies and warrants the necessity of this act and the uniform agreement between states on how to deal with this issue so that precious children are not traumatized and treated as Quinn has been treated.

18) The trauma to Quinn Holden might have been less if Cardozo had followed guidelines for assumption of custody outlined in the UCCJEA (Massachusetts Uniform Child Custody Jurisdiction and Enforcement Act page 17). This involves presentation of certified copies of the New York judgment to the appropriate Massachusetts court and allowing established procedures to take place. Instead, Cardozo chose to lie about his intentions and chose to circumvent these procedures, forcibly removing Quinn from his school and with the accompanying trauma to Quinn, which has been characterized as child abuse. (Family Abduction: Prevention and Response, National Center for Missing and Exploited Children page 11) (Enclosure) Quinn was not only physically harmed at the time of the abduction but there is long-term psychological harm, that has been established from these types of acts that should warrant immediate return of Quinn to his natural mother, Luisa H. Holden. The UCCJEA also provides expedited procedures for interstate enforcement of custody and visitation. The jurisdictional rules in the UCCJEA are not entirely consistent with the PKPA (Parental Kidnapping and Prevention Act) and, as a result, some custody orders made under the UCCJEA are not entitled under the PKPA to "full faith and credit" in other states. In case of a conflict, the Federal law preempts or takes precedents over inconsistent state law. (Family Abduction: Prevention and Response, page 28) This paper that Cardozo came with did not meet that standard nor follow the proper documentation, verification and enforcement procedures.

19) Quinn Holden was removed from the 5th grade of the Field School, Weston, MA without clothing, personal belongings or his medicine. Ms. Holden asked Inspector Walter Nelson if Quinn could get his clothing and medicine and was denied. All Quinn had with him was his backpack from school that day.

20) Cardozo has a documented drug and abuse problem as attested by court documents which was verbally reinforced by Quinn that day and on record at the Weston Police Station.

21) On 10/15/02, Waltham District Court, Waltham, MA, Docket No. 0251 RO 302, issued a restraining order (Massachusetts G.L. 209A) (Enclosure) preventing Cardozo from abusing Luisa H. Holden by harming, threatening or placing her in fear of imminent serious physical harm. Cardozo violated this order by making contact with Ms. Holden, by arriving abruptly and placing her in fear at the Weston Field School, Weston, MA with the intent of forcibly removing Quinn Holden from Massachusetts with out a certified order from New York State, with the appropriate directive to remove Quinn, filed appropriately. Ms. Holden was traumatized by this abduction that deprived her of her substantive due process with the abduction of Quinn Holden. Mass. App. Court 1998, convicted defendant of violation of restraining order and convicted defendant of parental kidnapping. MGLA c 265 Sec. 26A; c. 290A Sec. 1 and seq. Com v. Bachir 696 N.E. 2d. 948

22) Luisa and Quinn Holden's Civil Rights to substantive and procedural due process were violated. Ms. Holden was not appropriately served the faulty (not signed by the attorney) Order to Show Cause that resulted in a Default Judgment giving Cardozo

custody of Quinn Holden and needs to be unconditionally vacated by the New York Courts.

IN RESPONSE TO CLIVE CARDOZO

- The matter in front of this court is not a custody issue but an issue involving kidnapping, deliberate indifference and reckless disregard for substantive and procedural due process rights guaranteed by the 14th Amendment.

- In the initial complaint, Clive Cardozo was given notice of a kidnapping charge. The defendant failed to challenge the sufficiency of the indictment and for any other reason, Cardozo is being charged under sec. 1201 (a)(1), Which was sufficient to give defendant notice.

- The decision in Holden v. Cardozo 8 A.D. 3d 567, 778 N.Y.S. 2d 885 is not a final decision. Lana Cantrell improperly appealed only parts of the June 7, 2002 order. There are several other aspects of this case that have yet to be decided in the Supreme Court and the Riverhead Family Court. Therefore, I feel that since it is not a final decision of the courts, it can not be case law.

- Cardozo did not respond in a timely manner.

- Cardozo's late response was not in the proper format.

- Cardozo did not respond or refute the kidnapping, blood type, illegal drug, and physical abuse claims.

- All parties were not properly served as Cardozo failed to carbon-copy all involved.

In response to the following attorney's claims that state this is a malpractice claim and not the correct venue, I disagree. I am not asking for damages but as the gross negligence shown was very damaging to me and my case, I am asking for the return of all legal fees paid.

IN RESPONSE TO ATTORNEY THOMAS T. MCVANN JR., HE WAS NEGLIGENT BY:

- Attorney McVann did not reply in a timely manner.

- In November 2000, after submitting a Motion to Dismiss to the New York Supreme Court, McVann never followed up on that motion. Consequently, 2 years and 3 months later, Cardozo filed for an injunction on an abandoned matter. If McVann did his due diligence, and followed up on his original motion, this case never would have gone on.

- In 2001, J.H.O. Snellenberg denied the September 14, 2001 motion to dismiss this case to Massachusetts (Quinn's home state and a more convenient forum) citing, the UCCJEA, a proposed ruling that New York had not signed on to. Since the UCCJEA was not signed on to by the State of New York, it was not enforceable. McVann could have put in a Motion for Reconsideration in front of J.H.O. Snellenberg at the Riverhead Family Court but failed to do so. His lack of due diligence continued this mess in the New York court system.

- As instructed by the Riverhead Family Court, Atty. McVann failed to serve the June 7, 2002 order. The June 7th order instructed me to move back to Long Island, NY. McVann was relieved as my attorney on June 4, 2002. He was no longer representing me.

McVann still had a responsibility to the Court, to tell the court that the order was substantively and procedurally incorrect and that they did not have the jurisdiction to issue this order. McVann did not properly serve the order on me as instructed by the