UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 SEP 29 P 1: 11

U.S. DISTRICT COURT
DISTRICT OF MASS.

LUISA HAYWARD HOLDEN,
Plaintiff

v.

CLIVE CARDOZO, et. al.,
Defendants

**Civil Action No. 04-11657-RGS**

## REPLY TO PLAINTIFF'S RESPONSE TO MEMORANDUM AND ORDER TO SHOW CAUSE, SUMMARY COMPLAINT AND MOTION AND OPPOSITION TO MOTION TO AMEND COMPLAINT OF DEFENDANT ROLAND GRAY, III

The Defendant in the above-captioned action, Roland Gray, III ("Gray") hereby files this Reply to the Plaintiff Luisa Hayward Holden's ("Holden") Response to this Court's Memorandum and Order to Show Cause and Opposition to her Motion to Amend her Complaint ("Reply and Opposition"). Because Ms. Holden's Response also includes, in essence, a Motion to Amend her Complaint, Mr. Gray files this Reply and Opposition to respond to the newly raised allegations of fact. Those allegations do not redress the lack of subject matter jurisdiction of this court over this action, especially as it pertains to Mr. Gray, and further fail to state a claim upon which relief can be granted. As such, the Complaint must be dismissed as to Mr. Gray with prejudice, and no amendment allowed.

### FACTUAL BACKGROUND

Ms. Holden's Response and Motion to Amend her Complaint provides certain additional facts relating to Mr. Gray. The facts recited below are taken from the Complaint and Ms. Holden's Response and Motion to Amend, as they pertain to Mr. Gray.

The gravamen of the original Complaint and the proposed amendments to the complaint are that the purported father of the child, Defendant Clive Cardozo ("Cardozo") forcibly abducted Ms. Holden's son, Q.H., from the child's school. *See id.* at 12-13. Mr. Cardozo allegedly came to Massachusetts from New York with the intent to "snatch" Q.H. *Id.* at 12. As grounds for his right to custody of Q.H., Mr. Cardozo relied upon a faxed copy of a custody order entered by a court in the State of New York. *Id.* at 14-15.

The custody order that is at the center of Ms. Holden's Complaint was the result of a protracted custody battle in New York. Mr. Gray was retained to "consult" with Attorney Thomas McVann, also a defendant in this matter, and an attorney in New York. *Id.* at 24; Complaint, ¶ 4(b). According to Ms. Holden's proposed amendments, Mr. McVann, in an unidentified Supreme Court proceeding, submitted a motion to dismiss in November of 2000. Response and Motion to Amend, p. 20. Mr. McVann allegedly never followed up on the motion and it went undecided for two years and three months, at which time Mr. Cardozo was apparently able to "file for an injunction on an abandoned matter."[1] *Id.* Ms. Holden states that Mr. McVann's negligence with respect to that case extends to his alleged failure to appear as a witness on her behalf in the Supreme Court in or about June of 2004 to "answer questions regarding the abandoned case and to give a detailed analysis of the billing." *Id.* at 21

In 2001, in a proceeding in the Riverhead Family Court, Suffolk County, New York, the Judicial Hearing Officer J. Snellenberg, II ("JHO Snellenberg") denied a motion to transfer the custody case to Massachusetts, citing the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *Id.* According to Ms. Holden, the motion should not have been denied as New York had not "signed on" to the UCCJEA. *Id.* As a result, she claims that Mr. McVann

---

[1]      Ms. Holden does not elaborate as to what matter was abandoned, and what injunctive relief Mr. Cardozo sought on that abandoned matter.

should have filed a motion to reconsider, which he did not do.  *Id.*  Also in some unidentified proceeding before JHO Snellenberg, Mr. Gray allegedly went to New York for an unspecified purpose.  *Id.* at 25.  Because Mr. Gray did not provide "proper notification" he was "not allowed to be heard" before JHO Snellenberg  *Id.*  According to Ms. Holden, this failing constituted negligence on the part of both Mr. Gray and Mr. McVann.  Mr. McVann was also allegedly negligent for failing to raise in the Riverhead Family Court proceeding the fact that Mr. Cardozo refused to submit to a blood test to establish paternity, leaving the issue of paternity unadjudicated.  *Id.* at 21.

Mr. McVann withdrew from his representation of Ms. Holden effective June 4, 2002.  *Id.* at 20.  On June 7, 2002, JHO Snellenberg ordered that Ms. Holden move back to Long Island with her son.  *Id.*  Mr. McVann was to deliver the written order by certified mail return receipt requested to Ms. Holden, which, Ms. Holden alleges, he did not do.  *Id.*  In addition, Ms. Holden claims that Mr. McVann never contested the June 7, 2002 order on her behalf on the grounds that it was "substantively and procedurally incorrect" and because the court lacked the jurisdiction to issue such an order, even though as of June 4, three days prior to the issuance of the order, Mr. McVann no longer represented her.  *Id.*

According to the allegations in the proposed amendment to the Complaint, Mr. Gray was negligent in his oversight of Mr. McVann.  *Id.* at 25.  However, Ms. Holden has not alleged that Mr. Gray was actually retained to oversee Mr. McVann, or in which New York action he was supposed to oversee Mr. McVann.  She only alleges that he was retained to "consult" with Mr. McVann.  As a result of the supposed negligence of Mr. McVann, Mr. Gray and several other attorneys, Ms. Holden claims that Mr. Cardozo was able to obtain an improper order from the New York courts and use it to allegedly abduct Q.H.  This action followed.

Ms. Holden filed her original complaint on July 26, 2004. On August 16, 2004, Mr. Gray moved to dismiss the complaint for failure to state a claim upon which relief could be granted, on the grounds that Ms. Holden had failed to make out a valid claim of attorney malpractice, and because the court lacked subject matter jurisdiction over the dispute. Several other defendants also filed motions to dismiss. On August 25, 2004, the court issued a Memorandum and Order to show cause why the complaint should not be dismissed in its entirety. Ms. Holden filed her Response to the Memorandum and Order, which incorporated a Motion to Amend her Complaint on September 14, 2004. Mr. Gray opposed the Motion to Amend the Complaint on futility grounds and reiterates that the Complaint must be dismissed as to him with prejudice.

## ARGUMENT

While Fed. R. Civ. P. 15 provides a liberal standard for amending a complaint, amendment may be denied where such amendment would be futile. *Hatch v. Department for Children, Youth and Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) ("In the abstract, futility is fully sufficient to justify the denial of a motion to amend.") Futility is measured based upon the same standard utilized to evaluate a challenge to a complaint by a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id.*; *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). Here, the proposed amendment to the Complaint does not remedy the defects present in the Original Complaint, particularly the lack of subject matter jurisdiction. Furthermore, where the defendant raises additional allegations against Mr. Gray sounding in attorney malpractice and professional negligence, the additional allegations, even read liberally in the light most favorable to the Plaintiff, fail to make out a cognizable claim upon which relief can be granted. Hence, the amendment would be futile, and the Complaint must be dismissed with prejudice.

I.    **This Court Lacks Subject Matter Jurisdiction Over This Matter**

    A.    **Complete Diversity Does Not Exist Between The Parties.**

Ms. Holden's Response and Motion to Amend does not adequately address this court's lack of subject matter jurisdiction over her claims against Mr. Gray. Specifically, Ms. Holden misapprehends the nature of the diversity jurisdiction of the federal courts. *See* Response and Motion to Amend, pp. 8-9. In order for the federal district court to have diversity jurisdiction over a civil action, that civil action must be between "citizens of different states." 28 U.S.C. § 1332 (a)(1). "A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 388 (1998). Thus, it is not enough for there to be only one defendant whose citizenship is diverse from the plaintiff's, rather "[w]hen a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989) *citing Strawbridge v. Curtiss*, 7 U.S. (3 Cranch.) 267, 267 (1806) (emphasis in original). Significantly, "It is the burden of the party invoking diversity jurisdiction . . . to demonstrate complete diversity." *Alshrafi v. American Airlines, Inc.*, 321 F.Supp.2d 150, 154 (D.Mass. 2004).

    Ms. Holden has not shown that complete diversity exists between herself and Mr. Gray in the original Complaint or in the proposed amendments to it. Indeed, in her original Complaint, Ms. Holden states Mr. Gray's address in Massachusetts. Original Complaint, ¶ 4(f). At no point does she even allege that Mr. Gray is domiciled in any state other than Massachusetts. As such,

she has not met her burden to demonstrate complete diversity, and hence, this court is without jurisdiction to hear the case, and it must be dismissed.

### B.   There Is No Basis For Federal Question Jurisdiction.

The allegations proposed for an amended complaint also fail to disclose any federal question jurisdiction over Mr. Gray under 28 U.S.C. §, 1331. Federal question jurisdiction requires that the action "aris[e] under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Ms. Holden's allegations suggest a claim of attorney malpractice.[2] Professional malpractice claims are questions of state law and do not raise a federal question.

To the extent Ms. Holden has asserted a claim under 42 U.S.C. §§ 1983 and 1988, those claims do not and cannot apply to Mr. Gray. Section 1983 liability requires that the alleged infringement of one's constitutional rights must occur "under color of any statute, ordinance, regulation, custom, or usage, of any State." Private attorneys acting in their capacity as legal counsel for their clients are not acting under color of state law, and therefore are not subject to section 1983. *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980) ("Slotnick's section 1983 claims against the six attorneys arise from their participation as counsel, party and potential witnesses in a civil contempt proceeding. However, participation by a private party in litigation, without more, does not constitute state action, a necessary precondition to a section 1983 claim.") (citations omitted); *Antelman v. Lewis*, 480 F.Supp. 180, 185 (D.Mass. 1979) ("As a general proposition, private citizens are not state actors for purposes of the 'color of law' requirement of § 1983. This includes litigants, and their attorneys in state civil proceedings.") (citations omitted). As such, Ms. Holden's federal civil rights claims do not apply to Mr. Gray, and hence, federal question jurisdiction is lacking. As a result, the complaint must be dismissed

---

[2]     Ms. Holden's allegations do not give rise to a claim of attorney malpractice, and fail to state a claim upon which relief can be granted as discussed more fully *infra*.

with prejudice as to Mr. Gray.

### C.    Supplemental Jurisdiction Is Not Available In This Case.

Where the court lacks jurisdiction over the claims brought in this suit, there is also no
ground for the court to hear the pendent state law claims of attorney malpractice. Pendent state
claims may be heard by a federal district court exercising supplemental jurisdiction, provided the
civil action be one over which the federal court have original jurisdiction. Thus the court must
have proper diversity jurisdiction, or federal question jurisdiction.

As demonstrated above, the court does not have diversity jurisdiction, where the parties
are not completely diverse, and hence there can be no supplemental jurisdiction on that ground.
*See Rosario Ortega v. Star-Kist Foods, Inc.*, 370 F.3d 124, 136 (1st Cir. 2004). ("Thus,
Congress preserved both *Clark* and *Strawbridge* by providing that, before supplemental
jurisdiction can attach, the district court must first have 'original jurisdiction' over the action. In
a diversity case, if the *Clark* rule is not met, or if the parties are not completely diverse, then the
'original jurisdiction' requirement in § 1367(a) is not satisfied and supplemental jurisdiction will
not attach.") (internal citations omitted). Likewise, even if federal question jurisdiction applied
in this case, which it does not, the pendent state claims must be "so related to claims in the action
within such original jurisdiction that they form part of the same case or controversy under Article
III of the United States Constitution." As discussed Mr. Gray's Memorandum in Support of His
Motion to Dismiss, the attorney malpractice claims that Ms. Holden raises against Mr. Gray do
not form part of the same case or controversy as the civil rights claims which relate to the alleged
abduction of her child from his school. *See* Motion to Dismiss Roland Gray, III as Defendant, at
5. The proposed amendments to the Complaint do not alter the analysis. Specifically, Mr.

Gray's alleged negligence relates to the state court proceedings that took place in the State of New York. All of the allegations relate to Mr. Gray's conduct in issuing payments to the defendant Mr. McVann on the Plaintiff's behalf and in allegedly negligently "overseeing" Mr. McVann. Thus, these allegations are, at best, only tangentially related to Ms. Holden's civil rights claims stemming from the supposed abduction of her son. As such, the court cannot assert supplemental jurisdiction over the state law-based attorney malpractice claims, and hence, this action must be dismissed as to Mr. Gray with prejudice.

## II. Ms. Holden's Allegations Against Mr. Gray Fail To State A Claim Upon Which Relief Can Be Granted.

Finally, even if the court did have the power to hear the claims raised by Ms. Holden against Mr. Gray, which it does not, Ms. Holden's proposed amendments still fail to state a claim upon which relief can be granted and as a result the proposed amendment would be futile.

Ms. Holden's proposed amendments identify certain instances of supposed negligence by Mr. Gray who was allegedly acting as her attorney. In order to state a legal malpractice claim,[3] Ms. Holden must show, that Mr. Gray "had failed to exercise reasonable care and skill in handling her case, that she had incurred a loss, and that the [Mr. Gray's] malpractice was the proximate cause of the loss." *DiPiero v. Goodman* 14 Mass.App.Ct. 929, 929, 436 N.E.2d 998, 999 (1982) (internal citations omitted). Further, "[e]xistence of an attorney-client relationship is an element of a malpractice plaintiff's proof . . . ." Miller v. Mooney 431 Mass. 57, 61, 725 N.E.2d 545, 549 (2000). "Under Massachusetts law, it is not sufficient in a malpractice action merely to prove that an attorney-client relationship existed with respect to some matters. The

---

[3]       Ms. Holden maintains that she is not bringing a legal malpractice claim, rather a claim based upon "gross negligence" from which she seeks restitution of her legal fees. Such a claim is indistinguishable from a legal malpractice claim founded on the negligent performance of the attorney.

relationship must have existed with respect to the act or omission on which the malpractice action is based." *Best v. Rome*, 858 F.Supp. 271, 276 (D.Mass.,1994)

Additionally, "[t]o prevail on a claim for legal malpractice, the plaintiff must show that the attorney's breach of duty was the proximate cause of the damage or loss she sustained." *Meyer v. Wagner*, 429 Mass. 410, 424, 709 N.E.2d 784 (1999). It is not malpractice for an attorney to fail to "always secure optimum outcomes for their clients," or "simply because another attorney, or even many other attorneys, would not have made the same recommendation under the circumstances." *Id.* at 419-420, 709 N.E.2d at 791 (citations omitted). "The mere possibility that the defendants' negligence caused the harm is not sufficient to take the issue to the jury." *Girardi v. Gabriel*, 38 Mass. App .Ct. 553, 560, 649 N.E.2d 805, 809 (1995).

Ms. Holden raises only three substantive allegations against Mr. Gray.[4] Ms. Holden states that Mr. Gray was hired to "consult" with Mr. McVann and issued payments to Mr. McVann on Ms. Holden's behalf. Response and Motion, p. 24. Ms. Holden also alleges that Mr. Gray was supposedly negligent in "overseeing" Mr. McVann, presumably in the New York State court proceedings. *Id.* Further, Mr. Gray "came to New York, and did not give proper notification to JHO Snellenberg and thus was not allowed to be heard." *Id.* at 25.

First, these allegations do not establish that an attorney client relationship existed between Mr. Gray and Ms. Holden with respect to the New York State court actions. Indeed, Ms. Holden alleges only that Mr. Gray *consulted* with Mr. McVann and that he paid Mr. McVann monies on behalf of Ms. Holden. She does not provide a time frame in which this

---

[4]     The fourth allegation directed against Mr. Gray is incomprehensible. In it Ms. Holden states, "Attorney Gray did not follow the proper procedure; on his cover letter only selected parties were carbon-copied." Ms. Holden does not identify which procedures were not followed, or how only selected parties being carbon-copied on a cover letter do not comply with those procedures. Moreover, Ms. Holden also does not identify which cover letter she is referring to. The final "allegation" directed at Mr. Gray is a request for relief.

conduct took place, or which proceedings the alleged negligent conduct occurred in.[5]  In fact, there is no allegation that Mr. Gray was retained to participate in the New York state court proceedings or that there was any obligation to oversee or supervise Mr. McVann in New York. Without any such allegation, Ms. Holden cannot make out a claim of attorney malpractice against Mr. Gray.

The third allegation that Mr. Gray came to New York also does not establish any attorney client relationship, where Ms. Holden does not identify in which capacity Mr. Gray was to appear.  Even taking all inferences in favor of the Plaintiff, it is not reasonable to infer that Mr. Gray arrived in New York as Ms. Holden's legal counsel, where the other allegations in the proposed amendment only identify that Mr. Gray as having been retained to consult with Mr. McVann.

Even assuming that an attorney-client relationship existed between Mr. Gray and Ms. Holden for the purposes of the New York action, there are no reasonable allegations to suggest that Mr. Gray's alleged negligence was the proximate cause of Ms. Holden's injury.  Ms. Holden has failed to allege that were it not for Mr. Gray's negligence, that she would have been granted the relief to which she claims she was entitled.  Inferentially, Ms. Holden's desired outcome in the New York proceedings was to obtain full custody of her son and be permitted to move back to Massachusetts.  There is no allegation that had Mr. Gray's conduct been any different, Ms. Holden would have been able to achieve this result.  Ms. Holden, through counsel, appealed the June 7, 2002 decision of the New York Family Court (and a further order entered May 15, 2003) to the Appellate Division of the New York Supreme Court.  A panel of that court affirmed the Family Court's ruling denying Ms. Holden custody.  *See Holden v. Cardozo*, 8 A.D.3d 567, 778

---

[5]    The allegations in the proposed amendments directed at Mr. McVann indicate that there were two different proceedings, one in the New York Supreme Court, Suffolk County and the other in the Riverhead Family Court.

N.Y.S.2d 885 (N.Y. App. Div. 2d Dept. 2004). Where the outcome would not have been any different, Ms. Holden cannot maintain any action against Mr. Gray for malpractice. Hence, the proposed amendment is futile and the Complaint must be dismissed with prejudice as to Mr. Gray.

## CONCLUSION

For the forgoing reasons, the Plaintiff's motion to amend the Complaint must be denied and the underlying Complaint dismissed as to Mr. Gray with prejudice.

Respectfully submitted,
ROLAND GRAY, III
By his attorneys,

Alan K. Posner, BBO No. 403900
aposner@rubinrudman.com
Nur-ul-Haq, BBO No. 647448
nurulhaq@rubinrudman.com
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110
(617) 330-7000

Dated: September 29, 2004

## CERTIFICATE OF SERVICE

I, Nur-ul-Haq, hereby certify that on this 29th day of September, 2004, I caused to be served by first class mail, postage pre-paid a true copy of the foregoing upon all parties appearing *pro se* and counsel of record for all other named parties.